14700

ELLIS v. KANSAS CITY LIFE INS. CO.

(197 S. E., 398)

*Messrs. Benet, Shand & McGowan* and *Randolph Murdaugh,* for appellant,

*Mr. George Warren,* for respondent.

June 2, 1938.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The respondent was insured under a certificate issued under a group policy to National Rural Letter Carriers Association by the Continental Life Insurance Company; the appellant, Kansas City Life Insurance Company, assumed the liability of the Continental Life Insurance Company under the said certificate. The amount of the insurance on the life of the respondent was $2,000.00, and the policy contained a provision for the payment of benefits upon proof of total and permanent disability arising from bodily injury or disease.

About the ...... day of October, 1936, respondent furnished to the appellant what it is alleged was "proper proof" of said total and permanent disability. The appellant denied liability, and this action followed.

The prayer of the complaint is for Three Hundred Six and 24/100 ($306.24) Dollars, for disability benefits for the months of January, February and March, 1937, and that the appellant be required to pay the respondent the sum of One Hundred Two and 08/100 ($102.08) Dollars per month until twenty consecutive monthly payments have been made, inclusive of the payments now due.

The answer denied liability.

The case was heard by Judge Dennis, with a jury. Motions for directed verdict and new trial were made by the defendant, and refused.

The Court directed the jury to find simply for the plaintiff or for the defendant. A verdict was rendered as follows: "We find for the plaintiff." The Court overruled a motion for new trial, and in the same order provided: "That the plaintiff have judgment against the defendant for the sum of Three Hundred Six and 24/100 Dollars, with interest * * *. That the defendant do pay to the plaintiff on the first day of each month after March 1, 1937, the sum of One Hundred Two and 08/100 Dollars, with accrued interest, until twenty consecutive monthly payments have been made, inclusive of the payments mentioned above for the months of January, February and March 1937."

The defendant appeals upon grounds stated in four exceptions.

The first exception charges error for refusing the motion for directed verdict, which was predicated on the ground that there was no evidence to show that the plaintiff was totally and permanently disabled within the provisions of the certificate of insurance relating to total and permanent disability.

We think the testimony given by the daughter of the plaintiff, Emma Bell Ellis, furnished evidence which made it obligatory on the trial Judge to submit to the jury the question of total and permanent disability. The Court takes this occasion to re-affirm the rule laid down in the cases of *Hickman v. Aetna Life Ins. Co.*, 166 S. C., 316,

164 S. E.. 878; *DuRant v. Aetna Life Ins. Co.,* 166 S. C., 367, 164 S E., 881; *Owens v. Sovereign Camp, W. O. W.,* 174 S. C., 514, 178 S. E., 125; *Morgan v. Travelers' Ins. Co.,* 172 S. C., 404, 174 S. E., 235; and *Stewart v. Pioneer Pyramid Life Ins. Co.,* 177 S. C., 132, 180 S. E., 889, which rule is to the effect that the opinion of the doctor that the plaintiff was totally and permanently disabled can have no probative value in the face of evidence of the physical fact that the plaintiff was able, after he was alleged to be disabled, to perform the same sort of work he was accustomed to do.

In the case at bar, the Judge placed his refusal to grant the defendant's motion for directed verdict on the testimony of Emma Bell Ellis, excluding that of the doctor. Hence, the rule does not apply to his action in refusing the motion.

The second exception presents a more serious proposition for our consideration. It is as follows:

"His Honor erred in permitting plaintiff's counsel, on cross examination * * * to ask the following hypothetical question:

" 'What about a patient that comes to you, you examine him, say he is about 49 years old, you find him highly nervous not from allonal, morphine, liquor or anything of that kind, you have just examined him, you treat him from July to February, when you first examined his blood pressure it was 200, he complained of a severe pain in his neck and head, at that time he was highly nervous, he had an accelerated pulse, and from July to February lost 35 pounds in weight, and his blood pressure was 240 in February, would you consider that a man in that condition is disabled?' "

This hypothetical question was based either upon the facts in evidence in the case, or upon the opinion expressed by plaintiff's witness Dr. Peeples.

If it was predicated upon the evidence in the case, then that evidence must be correctly stated in the question. In overruling the objection to the question,

the Court said: "I do not think he has got to base a hypothetical question exactly on the evidence. He can ask any hypothetical question that he pleases to ask on cross examination. If those facts fit this case, and if they do not fit the case you can argue it to the jury. I cannot require him to remember the evidence as taken down by the stenographer in framing his question. If the facts do not fit this case, you can argue that to the jury. I still think that counsel can ask any hypothetical question that he wants to ask, whether it is based on the testimony in this case or not. Now go ahead."

We think this ruling is erroneous. If the question attempts to state the testimony or evidence, it must state it correctly; if it is stated upon alleged facts, not in proof, it is but the suggestion of counsel's mind and can furnish no basis for the jury's determination of the question of plaintiff's disability. If the question is framed upon the suggestions of the opinion of Dr. Peeples, plaintiff's expert witness, it is erroneous because Dr. Tuten, defendant's expert witness, is not allowed to give his expert opinion founded upon the opinion of another expert. It is uncontradicted that Dr. Tuten had never examined the plaintiff.

As to the issue that the question as framed does not contain the evidence in the record, it would seem that the comments of the presiding Judge practically admit that. An examination of the language of the hypothetical question and of the evidence in the record, shows that neither Dr. Peeples, nor any other witness, testified that the plaintiff never took allonal, morphine, liquor or anything of that kind, and Dr. Peeples did not treat plaintiff from July to February, nor did Dr. Peeples say plaintiff's blood pressure was 240 in February. Therefore, these statements in the hypothetical question propounded to Dr. Tuten are incorrect.

"Hypothetical Questions—Assumption of facts in putting a question may be regarded as a test of whether a witness is being examined as an expert. The expert, properly so called,

is asked what would be his judgment upon all or any pre-
scribed part of the facts, as to which evidence has been law-
fully received, or which has been admitted, assuming that
they are true; provided that a sufficient number of facts are
assumed to enable the witness to give an intelligent opinion.
The witness having no facts in mind as the result of obser-
vation, it is in this way alone that a proper basis for a rea-
sonable judgment can be furnished, and the witness cannot
add to the hypothetical question, facts within his own knowl-
edge *and not in evidence.* The requirement that the question
should be in hypothetical form, *stating fact of which there
is some evidence in the case, continues* throughout the ex-
amination of the expert, * * *. Different hypotheses
may be submitted to the witness for different parties, *pro-
vided the facts embraced in each hypothesis have some sup-
port in the evidence."* (Italics added.) 22 C. J., 706-708.

"A Hypothetical question which includes, with other facts,
the opinion of another expert is improper." *Ibid,* page 709.

"A question 'upon the evidence' should never be per-
mitted where the facts are in dispute, for the reason that
such a practice necessarily involves an invasion of the prov-
ince of the jury." *Ibid,* page 719.

It was held in the case of *Mt. Royal Cab Co., Inc., v.
William E Dolan,* 168 Md., 633, 179 A., 54, 98 A. L. R.,
1106, that: "The opinion of an expert, however qualified to
speak, cannot be predicated either in whole or in part upon
the opinions, inferences and conclusions of others, whether
expert or lay witnesses."

An analysis of the hypothetical question with which
we are dealing discloses that it is framed upon the
opinions, inferences and conclusions of Dr. Peeples,
the expert testifying for plaintiff. The rule from the *Dolan
case, supra,* shows the wisdom of the principle there cited.
In the present case statements are included, evidently at-
tributed to Dr. Peeples, which are not in the testimony of
the witness. The hypothetical question as thus framed did not

present the correct evidence, and was, therefore, improperly admitted; and it also required Dr. Tuten to give an opinion upon opinions attributed by the question to Dr. Peeples.

We think this was error.

The third exception charges error to the presiding Judge for that he charged the jury as follows: "There is some testimony in this case with reference to whether or not this man milked a cow for pay. I charge you that that does not mean that he could not recover even if he did milk a cow, that is not the kind of work. Oftentimes it might be advantageous to a man who is sick, or totally and permanently disabled from doing his regular work, to do some little things, or to do as much as he could, and that would not say that he was not totally and permanently disabled from doing the job he had or work of a similar nature and kind."

The error alleged is that this was a charge on the facts.

The record discloses that the respondent was a rural mail carrier, that his route was a short one which required only about three and a half hours of his time a day. That he was discharged from this employment because he had plead guilty and been punished for a violation of the liquor laws. Defendant undertook to show that respondent could do light work; work as light as that of his mail carrier employment, and for that, from the doing of such work, it was inferable that he was not totally and permanently disabled. For this purpose he introduced testimony that respondent had milked a cow several months and was seen doing chores about his premises. This testimony was admitted without objection, and was clearly proper for the consideration of the jury upon the cardinal issue submitted to it, viz., Was the plaintiff totally and permanently disabled?

We think there is no doubt that his Honor infringed upon the province of the jury, and conveyed thereto his opinion of the force and effect of the evidence.

This exception is sustained.

The fourth exception charges error for that his Honor in his order for judgment, gave judgment as follows: "It

is further ordered, adjudged and decreed that the defendant do pay to the plaintiff on the first day of each month after March 1, 1937, the sum of One Hundred and Two and 08/100 ($102.08) Dollars and accrued interest until twenty consecutive monthly payments shall have been made, inclusive of the payments mentioned above, for the months of January, February and March, 1937." And in holding: "That at the time of the commencement of the action the total amount of insurance effective on such insured became payable in installments as required in said total and permanent disability benefit clause."

The error being (a) that plaintiff's recovery was limited to the amount due up to the commencement of the action, viz., three installments for January, February and March, 1937, of $102.08. (b) In holding that under the disability clause of the policy all the twenty installments were due at the commencement of the action.

In his order for judgment, the Circuit Judge said: "In passing this order the Court is not unmindful of the ruling of the Supreme Court in the case of *Odiorne v. Prudential Insurance Company of America,* 176 S. C., 69, 179 S. E., 669, but holds that the contract for total and permanent disability benefits involved in the case at bar reads as follows:" (Setting it out.)

In his order in this case his Honor does not point out any differences in the provisions of the contract for total and permanent disability benefits in this case and the contract in the *Odiorne case.* Nor are any such differences apparent in the report of the latter case. Inspection shows that in every essential fact, the provisions, conditions and limitations of the two policies are in accord. The Supreme Court in modifying the judgment in the *Odiorne case,* said (page 670):

"In his order, Judge Dennis granted judgment for respondent for the amount due at the time of the commencement of this action, together with interest thereon to the date

of the verdict. In this we are of the opinion that he was correct.

"However, Judge Dennis then further decreed that all further premiums shall cease, and that respondent is entitled to the payment of further and future installments under the policies. In this we are of the opinion that he was in error. This is a law case, and in it only the rights and liabilities of the parties up to the time of the commencement of the action can be adjudicated. *Black v. Jefferson Standard Life Ins. Co.,* 171 S. C., 123, 171 S. E., 617. This portion, therefore, of the order must be set aside."

In the *Black case, supra,* this occurs (page 619) :

"Then, again, the policy provides that, if the insured should fail to furnish due proof (of his continued total disability) or if he should recover (regain his health), then the monthly payments should cease and the payment of premiums should be resumed. This provisions of the policy was before the Court, and shows that the disability, although seemingly and presumably permanent, might be removed. It might have been removed at some time between the commencement of the action and the date of the trial. By the complaint the defendant was called upon to defend the action as it then existed, and could, with propriety, have objected to any testimony touching the disability of the plaintiff or his physical condition after the action was begun. This was not a liquidated demand, one which the Circuit Judge could say was fixed and would continue during any given time, whether up to the date of the trial or during the entire life of the insured. The development of medical and surgical science in the past few years has been such that many persons afflicted with apparent total disability have been restored to normal health. The provision in the policy was to permit the insurance company to avail itself of any benefit which might be derived from this provision should the cricumstances of the individual case permit. We are therefore convinced that the recovery of disability payments should have been limited to that period of time between February 4, 1931, when the

proofs of disability were filed, to April 30, 1931, when the action was commenced. The following extract from the case of *Young v. Peoples Bank,* 163 S. C., 57, at page 69, 161 S. E., 324, 328, is applicable: 'Appellants' position is strongly supported by the authorities. It has been a generally recognized rule, receiving application in many cases, that the plaintiff must stand or fall by the condition of affairs existing at the time of the commencement of the action.' "

In addition to the provision of the certificate of insurance quoted in the order for judgment, there is another which relates to total and permanent disability, which is as follows: "Notwithstanding that proof of total and permanent disability may have been accepted by the Company as satisfactory, the Member shall at any time on demand from the Company furnish due proof of the continuance of such disability, and in the case of his failure to do so such Member shall be deemed to have recovered from such disability. In the event that said Member recovers from such disability before all the installments have been paid, or fails on demand to furnish due proof of the continuance of such disability, all payments of installments to him shall cease. Insurance on such Member shall then be revived in the amount of the commuted value on a basis of interest at the rate of three and one-half per cent per annum of the installments remaining unpaid to such Member at the time of recovery."

Here is a vital right of the appellant rendered null and void by the order appealed from. Under the above provision of the policy, the company may demand, and the insured must furnish, proof of continued disability; if he fail to do so, or if the disability cease before all the installments have been paid, the Company's liability to pay ceases. But not so now, the order of judgment holds that these installments were due at the commencement of the action, and gives judgment for them. If that order stands, before the company can avail itself of the provisions of the policy, it must move to vacate the judgment. The order, dis-

regarding the terms of the contract, transfers the burden from the insured to the company.

In order to sustain the judgment appealed from, this Court must overrule the cases of *Odiorne* and *Black, supra;* this it is not ready to do.

The judgment is reversed and the case is remanded for re-trial.

MR. CHIEF JUSTICE STABLER concurs in result.

·MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL concur.

MR. JUSTICE CARTER did not participate on account of illness.